## Blair v. O'Hara, Secretary of the Commonwealth, et al.

*John H. Fertig* and *John Y. Scott*, for petitioner.

*H. J. Woodward*, Deputy Attorney General, and *James H. Duff*, Attorney General, for respondents.

RUPP, J., September 18, 1944.—This matter comes before us on a motion to quash a writ of alternative mandamus and to dismiss the petition upon which it was issued.

The petition for the writ sets forth the following:

Petitioner, Beatrice I. Blair, was an original member of and contributor to the State Employes' Retirement System, created by the State Employes' Retirement Act of June 27, 1923, P. L. 858, as amended (71 PS §1731 et seq.).

She entered the employ of the Commonwealth on December 6, 1920, and on March 8, 1935, after 14 years' and 3 months' continuous service, having become physically incapacitated for the performance of her duties because of defective vision, applied to the State Employes' Retirement Board for disability retirement.

On April 11, 1935, the board granted petitioner a disability retirement allowance of $30.39 per month, effective March 11, 1935. This action was taken pursuant to the provisions of section 12 of the State Employes' Retirement Act, supra, as amended (71 PS §1742), which provides as follows:

"Retirement upon disability shall be made . . . as follows:

"(1) Upon the application of a contributor, or of one acting in his or her behalf, or upon the application of the head of his department, the retirement board shall retire said contributor on a disability allowance if he or she is under the superannuation retirement age,

and on a superannuation allowance if he or she has attained or passed such age: Provided, The physician or physicians designated by the retirement board, after a medical examination of said contributor made at the place of residence of such contributor, or at a place mutually agreed upon, shall certify to the retirement board that said contributor is physically or mentally incapacitated for the performance of duty, and that said contributor ought to be retired: And provided further, That said contributor has had five or more years of service as a State employe."

The disability retirement allowance of petitioner was composed of two parts, a member's annuity of $4.72 a month and a State annuity of $25.67 per month.

Petitioner received the allowance from March 11, 1935, to January 31, 1937. On April 16, 1937, the board suspended the allowance as of January 31, 1937, because petitioner was then temporarily employed and not because she had recovered from the disability for which she originally was retired, as disclosed by the report of her physical condition received by the board prior to its action.

On April 2, 1941, having lost her temporary employment, she applied for a reinstatement of her disability retirement allowance, since her defective vision had not improved and since she was unable to follow her vocation as a stenographer-clerk and was unable to secure other employment.

On May 21, 1941, without having petitioner undergo a physical examination, the board denied the application for reinstatement. Upon petitioner's request, on October 8, 1941, the board reconsidered its action and directed a physical examination of petitioner. The physician appointed by the board to make the examination reported that petitioner had defective vision and recommended that retirement payments be resumed. Accordingly, on January 8, 1942, the board approved the reinstatement of petitioner's disability retirement

allowance as of that date and the payment of petitioner's member annuity from February 1, 1937, the time the disability retirement allowance was suspended, to January 8, 1942, when the reinstated disability retirement allowance was to begin.

On January 30, 1942, the board transmitted to petitioner a check for the member's annuity from February 1, 1937, to January 8, 1942, and a check for her disability retirement allowance (which included her member's annuity and State annuity) from January 8, 1942, to January 31, 1942.

The former check was accepted by petitioner, who returned the latter check, claiming that the disability retirement allowance, that is, her State as well as her member's annuity, should have been reinstated as of the date of her application, April 2, 1941.

Subsequently, on October 7, 1942, petitioner was advised that at a meeting held on September 28, 1942, the board had rejected her application for reinstatement of her disability retirement allowance, or both her member's and State annuity.

## Discussion

This being a motion to quash, the foregoing averments of fact contained in the petition are admitted.

The question for our determination is: Did the board properly exercise the powers delegated to it by the State Employes' Retirement Act with respect to the member's and State annuities comprising petitioner's disability retirement allowance?

That once having granted her a disability retirement allowance the board, as of February 1, 1937, did not have the power to suspend or, on September 28, 1942, to refuse to reinstate the member's annuity was established by this court in Kline v. O'Hara et al., 54 Dauph. 379 (1943), and needs no elaboration here.

As to the State annuity, section 15 of the State Employes' Retirement Act, supra, as amended (71 PS §1745), reads, in part, as follows:

"A member's annuity, a State annuity, or a retirement allowance, granted under the provisions of this act, shall be paid in equal monthly instalments, and shall not be increased, decreased, revoked, or repealed except as otherwise provided in this act. . . ."

Section 12(2) of the act, supra, as amended, provides as follows (71 PS §1742):

"Retirement upon disability shall be . . . discontinued as follows:

"(2) Once each year the retirement board may require any disability annuitant, while still under the superannuation retirement age, to undergo medical examination by a physician or physicians designated by the retirement board; said examination to be made at the place of residence of said beneficiary, or other place mutually agreed upon. Should such physician or physicians thereupon report and certify to the retirement board that such disability beneficiary is no longer physically or mentally incapacitated for the performance of duty, or that such disability beneficiary is able to engage in a gainful occupation, and should the retirement board concur in such report, then the amount of the State annuity shall be discontinued, or reduced to an amount that shall not be in excess of the amount by which the amount of last year's salary of the beneficiary, as a State employe, exceeds his present earning capacity."

It is the contention of petitioner that, applied to the facts and circumstances of her case, the foregoing sections did not give the board the power at any time to *discontinue* her State annuity but limited its power to a *reduction* of the State annuity to an amount not in excess of the amount by which the amount of her last year's salary as a State employe exceeded her "present earning capacity". We agree.

It is the cessation of the physical or mental incapacitation of the annuitant for the performance of duty that controls the discontinuance of the State annuity,

and not, as contended by the Commonwealth, her ability, though still incapacitated, to engage in a gainful occupation with an earning capacity; if the disability continues, the board must reinstate a State employe.

Thus, where, as here, the disability for which the beneficiary was originally retired continues, if the board finds that she has present earning capacity its powers are limited to the reduction of the amount of the State annuity to the extent set forth above. It follows that upon the termination of her earning capacity, if the disability continues, the board must reinstate her State annuity.

The incongruous result of sustaining the Commonwealth's position would be that, if at any time the "present earning capacity" of an annuitant with a continuing disability exceeded by so much as one dollar her last year's salary as a State employe, her disability retirement allowance could be terminated and she would be forever barred from reinstatement, while if it remained within one dollar of her prior State salary her allowance could continue. We see nothing in the act to substantiate such an interpretation.

Moreover, the board erred in its action of September 28, 1942, not only for the foregoing reasons, but because, having previously reinstated petitioner's disability retirement allowance on January 8, 1942, and having made payments thereon, by subsequently reconsidering its action and refusing to reinstate the allowance it, in effect, nullified its prior order. There is no provision in the act for such a procedure.

Accordingly, we conclude that the board at no time had the power to suspend, or refuse to reinstate, petitioner's member's annuity, and that her State annuity should have been reinstated as of April 2, 1941, the date of the application, upon a showing that her disability continued while her earning capacity had ceased.

We have considered and found no merit in the other reasons advanced by the respondents for quashing the writ.

And now, September 18, 1944, the motion to quash the writ of alternative mandamus is dismissed and the respondents are given twenty days within which to file an answer.